SHEPHERD
*v.*
LEEDS.

</div>

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## Mrs Ann W. Jeter *v.* Mary E. Heard.

A continuance was properly refused when the party desiring the testimony of a witness absent in a distant parish, instead of taking out a commission to examine him, dispatched a special messenger to bring the witness; by doing so he took upon himself the risk of the witness being in court on the trial.

The affidavit of the jurors who tried the case, as to what they understood at the time of rendering their verdict would be its effect, is inadmissable. The effect of the verdict is a matter of legal construction, and the jurors have no capacity to serve as its interpreters.

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J.
*A. T. Steele,* for plaintiff. *A. Lothrop* and *C. A. Johnson,* for defendant and appellant.

Buchanan, J. (Spofford, J., absent.) Plaintiff sues for arrears of rent due her upon a contract of lease of a house.

Defendant pleads that plaintiff has violated a contract to finish certain repairs to the house by the 1st of October, 1854, by means whereof defendant was greatly damaged. She claims damages in reconvention.

The jury who tried the case rendered a verdict in favor of the plaintiff for the amount claimed in the petition; and that the suit in reconvention be dismissed. From a judgment, rendered in conformity to this verdict, the defendant has appealed.

Defendant and appellant urges that the District Court erred in refusing a new trial, applied for upon two grounds supported by affidavits. The first of those grounds is the absence of a material witness, named *Pitts,* whose absence had been the subject of an application for a continuance, and involves the correctness of the refusal of said continuance.

The District Court did not err in refusing the continuance. The defendant had not taken proper steps to secure the benefit of *Pitt's* testimony. He was in the parish of Avoyelles, and defendant, instead of taking out a commission to examine him there, had dispatched a special messenger to bring him to New Orleans; and had thereby taken upon herself the risk of his being in court on the trial.

The defendant also appended to her application for a new trial an affidavit, signed and sworn to by all the twelve jurors who tried the cause, that they had understood, in rendering a verdict dismissing defendant's reconvention, that the defendant was not to be barred by such verdict from instituting another suit for the same matters embraced in her reconventional demand.

The District Judge properly disregarded this affidavit. Even in the much stronger case of misconduct of the jury, it has been repeatedly decided that the affidavit of a juror is incompetent to impeach the verdict. 1 N. S. 514; 11 L. R. 141; 11 L. R. 191; 3 An. 435; 9 Rob. 387.

Here then is no question of misconduct in the jury, but of a misunderstanding on their part of the legal effect of the verdict to which they all agreed. Such an inquiry is entirely inadmissable. It was the duty of the Judge to instruct the jury upon the form of their verdict, and we are bound to presume that he did so. The verdict was returned into court by the jury, and read and recorded in the presence of both parties represented by counsel. Its effect is matter of legal construction of its terms, and the jurors who rendered it have no capacity to serve as its interpreters.

Upon the merits, we think that the defendant has made out a case of damage occasioned by the fault of plaintiff. There appears to have been two contracts between these parties. The original one, a lease by *Jacob L. Florance* to *Mary E. Heard*, of a large boarding house called the "Florance House," for three years from October 15th, 1852, for the yearly rent of three thousand dollars, payable monthly; which contract was assigned to plaintiff by *Florance* in February, 1853.

This original lease was modified and altered by contract between the plaintiff (by *John T. Jeter*, her husband,) and *Mrs. Heard*, on the 17th July, 1854.

The essential clauses of the second or modified contract of lease are as follows:

"*Mrs. Mary E. Heard* hereby agrees and binds herself to release and deliver to *John T. Jeter* the two rooms of the basement of said Florance House, situate on the corner of Camp and South streets, for the purpose of a dry goods store, or for any other purpose that the said *John T. Jeter* may think proper to appropriate the same, due regard being had to the safety and convenience of *Mrs. Heard*, tenant of the remainder of said Florance House. The said release and delivery of said two rooms shall take effect whenever the repairs and alterations hereinafter particularly mentioned and described shall have been completed: that is to say, from 1st September to 1st October next, 1854. For and in consideration of the foregoing release and delivery of the above named two rooms, the said *John T. Jeter* hereby agrees and binds himself to make the following repairs and alterations of the remainder of said Florance House, occupied as a boarding house, to wit: to put gas fixtures in the parlors, dining room and halls, and also to put up a genteel iron verandah in front on South street, the entire size of the building, say fifty feet front on said street, the verandah to extend in front of each story on South street; to repair and otherwise fit up the gallery on Camp street, which is now in bad condition, and to put the same in good order and condition in every respect; and to paint and repair thoroughly the said building, both inside and out, so as to render it a good and substantial tenement, and adapted to the purposes of a genteel boarding house in every respect; all of said repairs to be made at the cost and expense of the said *John T. Jeter*, in a good, substantial and workmanlike manner. It is hereby expressly agreed between the parties that the original lease hereinbefore referred to shall remain in full force and virtue in every particular, as to the monthly payment of rent, and all other rights and obligations of either of said parties arising therefrom."

The evidence shows that the repairs which the plaintiff by this contract obliged herself to complete by the 1st October were not in fact completed until the 1st January, three months later, and that this delay interfered very materially with defendant's business, and caused her to lose many boarders. It may in fact be said, under the proof adduced, to have broken up the defendant's

<div style="text-align: right">JETER<br>r.<br>HEARD.</div>

business for that season. Now, although the general rule of law is (C. C. Art. 2670) that if, during the lease, the thing leased should be in want of repairs, the tenant is obliged to submit to any inconvenience that he may be put to by such repairs, yet even that general rule provides for a diminution of the rent if the repairs occupy more than a month; and in this particular case the repairs were made the object of a special agreement fixing not only their extent but the time to be occupied in making them, and, what is particularly to be noticed, stipulating the release by the tenant to the landlord of a valuable portion of the premises leased, without any reduction of rent, to take effect from the 1st October, as a remuneration or indemnification to the landlord for making the repairs.

Now, it is in proof that plaintiff let the two rooms in the basement thus released for one hundred dollars a month, so that he appears to have received during the last year of defendant's lease three hundred and fifty dollars a month for those premises which, by the original lease, defendant hired for two hundred and fifty dollars a month. As the plaintiff, although she has reaped this considerable advantage from the contract of the 17th July, 1854, has violated her engagements under that contract towards the defendant, and has thereby caused the latter a loss, which, although not precisely ascertained by the evidence, yet was certainly very considerable, it has seemed to us equitable and even moderate to award to defendant the restitution of the additional rent, say twelve hundred dollars, which plaintiff has received for the Florance House during the last year of the defendant's lease.

It is to be observed that there is nothing before us but the reconventional demand; the claim and judgment of plaintiff having been satisfied in full, as appears by the record.

It is, therefore, adjudged and decreed, that the judgment of the District Court upon the claim of plaintiff remain undisturbed; that as regards the reconventional claim of defendant, the judgment be reversed; and judgment is hereby rendered in favor of defendant and appellant, against plaintiff and appellee, upon the reconvention, in the sum of twelve hundred dollars, with legal interest from the 11th of April, 1855, and costs of appeal.